UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Cordell Anthony Coke, *et al.,*

    Plaintiffs,

v.                                                                  Case No. 13-13374

Delta Airlines, Inc.,                                    Sean F. Cox
                                                          United States District Court Judge

    Defendant.
_____/

**<u>OPINION & ORDER</u>**
**<u>GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

      Plaintiffs are two former baggage handlers who were employed by Defendant Delta Airlines, Inc. ("Delta"). They were both terminated in 2011, after their security badges, which are necessary for them to perform their jobs, were revoked by a third party after criminal charges were brought against them. They were both indicted and charged with being involved in a drug conspiracy that allegedly involved smuggling drugs into Detroit Metropolitan Airport. Plaintiffs were both ultimately acquitted of the criminal charges after a jury trial in 2013, but Delta declined to rehire them. Plaintiffs allege that Delta discriminated against them based on their national origin when it terminated them and when it decided not to re-hire them. They also contend that the decision not to rehire them violates "public policy." The matter is currently before the Court on Defendant Delta's Motion for Summary Judgment. The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided upon the briefs. For the

1

reasons set forth below, the Court shall GRANT Delta's motion and dismiss this action with prejudice.

## BACKGROUND

Plaintiffs Cordell Anthony Coke ("Coke") and Huram David Joseph ("Joesph") (collectively "Plaintiffs") filed this action against Defendant Delta in state court and Delta removed the action to this Court on August 6, 2013, based upon diversity jurisdiction. Plaintiffs' Complaint alleges: 1) national origin discrimination, under the Elliott-Larsen Civil Rights Act ("ELCRA") (Count I); and "violation of public policy" (Count II).

Following the close of discovery, Delta filed the instant Motion for Summary Judgment. This Court's practice guidelines, which are expressly included in the Scheduling Order issued in this case, provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Docket Entry No. 30 at 2-3).

Both parties complied with the practice guidelines, at least to some extent. Along with

Defendant's Motion for Summary Judgment, it filed a Statement of Undisputed Material Facts ("Def.'s Stmt."). Along with Plaintiffs' Brief in opposition to the motion they filed a Counter Statement of Facts ("Pls.' Stmt."). But in violation of this Court's practice guidelines, at various times, Plaintiffs deny a statement but do not set forth any evidence to support their denial, or reference things that were never submitted to the Court. For example, Plaintiffs reference a Statement of Plaintiffs' Counsel, but no statement, declaration, or affidavit was submitted by Plaintiff's Counsel. (*See* Pls.' Stmt. at 43). Plaintiffs also reference "Joseph Deposition, exhibit 20" (*see* Pls.' Stmt. at ¶ 17), but Plaintiffs did not submit any deposition transcripts, or any exhibit marked number 20, with their brief.

The following material facts are gleaned from the evidence that was submitted by the parties. They are undisputed, except where it is noted otherwise.

Coke and Joseph are naturalized United States citizens, originally from Jamaica. (Pls.' Compl. at ¶ 5). Coke and Joseph were both employed with Northwest Airlines and became Delta employees when Northwest merged with Delta in 2010. (Pls.' Compl.; Def.'s Stmt. at ¶ 11).

Coke and Joseph were both Equipment Service Employees, which are also known as "baggage handlers." As part of their job, Plaintiffs loaded and unloaded baggage directly from an aircraft. (Def.'s Stmt. at ¶ 6; Pls.' Stmt. at ¶ 6). As baggage handlers, Coke and Joseph were required to have a Security Identification Display Area ("SIDA") badge to perform their job. That is because a SIDA badge authorizes an employee to be in secured areas at the airport and, without a SIDA badge, a baggage handler would be prohibited from entering secured areas necessary to load and unload baggage from air planes. (Def.'s Stmt. at ¶ 8; Pls.' Stmt. at ¶ 8).

The SIDA badge is a requirement of the Wayne County Airport Authority. (Def.'s Stmt. at ¶ 7; Pls.' Stmt. at ¶ 7). The decision to issue, deny, or revoke a SIDA badge is determined by the Wayne County Airport Authority. (Def.'s Stmt. at ¶ 9; Pls.' Stmt. at ¶ 9; Johnson Decl. at ¶ 8).

On January 23, 2010, Kurt Fiegel, a Special Agent for the Department of Homeland Security, who was assigned to Detroit Metropolitan Airport ("DTW"), received a call from another Special Agent in Jamaica that 53 pounds of marijuana had been discovered inside a suitcase onboard Northwest Airlines flight #2331 that was bound for DTW. (Def.'s Stmt. at ¶ 13; Pls.' Stmt. at ¶ 13). The suitcase at issue had a legitimate Northwest airlines baggage tag and the government determined that the passenger who owned the suitcase was an unwitting participant in the smuggling attempt. (*Id.*). Thereafter, the federal government began investigating whether baggage handlers were involved in a drug smuggling operation between Montego Bay Jamaica and Detroit, Michigan. (Def.'s Stmt. at ¶ 17; Pls.' Stmt. at 17).

On April 28, 2011, Coke and Joseph were arrested on felony drug-related charges. (Def.'s Stmt. at ¶ 18; Pls.' Stmt. at ¶ 18).

On or around that same day, Delta learned that other Delta employees, Glenford Stephens ("Stephens"), Christopher Tanaka Bradley ("Bradley"), and Kevin Jernigan ("Jernigan") had also been arrested.

On or around the same time, in April of 2011, the federal government also arrested and filed a complaint against other Delta baggage handlers, Clifford Skinner ("Skinner") and Kelvin Atwater ("Atwater"), regarding drugs smuggled from Houston to Detroit. (Def.'s Stmt. at ¶ 23; Pls.' Stmt. at ¶ 23).

On May 2, 2011, Plaintiffs' supervisor at Delta, Bobby Johnson, interviewed Coke and Joseph separately regarding their arrests. At that time, Plaintiffs also submitted handwritten statements to Johnson. (Def.'s Stmt. at ¶ 26; Pls.' Stmt. at ¶ 26; Coke Dep. at 57-58). Johnson then advised Plaintiffs that they were suspended pending further investigation by Delta. (*Id.*; *see also* Johnson Decl. at ¶ 12).

On May 4, 2011, Delta learned that the Wayne County Airport Authority would be revoking SIDA badges for all of the Delta employees who had been charged in the criminal cases, including Plaintiffs. (Def.'s Stmt. at ¶ 27; Pls.' Stmt. at ¶ 27).

On May 13, 2011, Delta sent Coke and Joseph each a letter stating that they were being terminated, effective immediately. (Ex. A to Pls.' Resp. Br. at 1 & 2). In those letters, Delta stated:

> This letter is being sent as a follow up to the company investigation to advise you that your employment with the company is terminated effective immediately. The reasons for your termination are set forth below.
>
> Prior to the completion of Delta's investigation of the criminal charges recently brought against you, Delta learned that the Detroit airport will be withholding your security identification display area (or SIDA) badge for an indefinite period of time. Without a SIDA badge, you cannot perform your job duties as an Equipment Service Employee.

(*Id.*).

After their terminations, Plaintiffs' positions at Delta were backfilled by other Delta employees based solely on seniority. (Johnson Decl. at ¶ 17).

Coke and Joseph, along with Delta employees Bradley, Jernigan, and Stephens, were indicated by a federal grand jury for conspiracy of possession with intent to distribute a controlled substance. (Def.'s Stmt. at ¶ 32; Pls.' Stmt. at ¶ 32).

5

Plaintiffs, along with their co-defendants, proceeded to a jury trial. Neither Coke nor Joseph testified at trial. (Def.'s Stmt. at ¶ 33; Pls.' Stmt. at ¶ 33). Former Delta employees Skinner and Atwater, who pleaded guilty in their separate criminal cases, testified at Plaintiffs' trial. (*See* Ex. 4 to Nabors's Decl.).

During Plaintiffs' criminal trial the United States Attorney's Office used a powerpoint presentation, in connection with its closing argument, to summarize the evidence presented at trial indicating Coke and Joseph's involvement in the drug smuggling operation. (Def.'s Stmt. at ¶ 34; Pls.' Stmt. at ¶ 34; *see* Ex. 4 to Nabors's Decl.).

It is undisputed that the jury found Plaintiffs' co-defendants Bradley and Jernigan guilty but acquitted Plaintiffs Coke and Joseph, and co-defendant Stephens, of all charges.

Kelley Nabors ("Nabors") is Delta's Program Manager for the Equal Employment ("EO") Office. (*See* Nabors's Decl., Ex. F to Def.'s Br., at ¶ 3). "Delta's policies do not provide for automatic reinstatement or rehire of an employee who was terminated because their SIDA badges were revoked by the Wayne County Airport Authority for criminal charges, but then later acquitted for the criminal charges." (*Id*. at ¶ 9). Delta does allow an employee to appeal a termination. (*Id.* at ¶ 5). Upon receipt of an appeal, Nabors, or another member of Delta's EO Office "investigate[s] the appeal. The investigation involves reviewing the request for appeal by the employee, interviewing the employee, reviewing any additional or new information that may be relevant, and reviewing the employment history." (*Id*. at ¶ 6).

On or about February 20, 2013, Delta received a letter requesting that Coke and Joseph, and Stephens who is not party to this action, be reinstated. (*See* Ex. 2 to Nabors's Decl.). That letter advised that Coke and Joseph had been acquitted at the criminal trial. The letter requested

"reinstatement of employment for each of these men, based on their employment histories and acquittal of charges." (*Id*.).

Nabors then investigated. Upon review of their employment records, she "learned that Coke and Joseph were former Equipment Services Employees, who had been terminated from Delta because the Wayne County Airport Authority revoked their [SIDA badges] afer they were arrested by the federal government for drug-related charges." (Nabors's Decl. at ¶ 8). "At the time [she] received Coke and Jospeh's request for reinstatement/rehire, [Nabors] was aware that Coke, Joseph, and Stepens had been involved in, along with two other former employees, Kevin Jernigan and Christopher Tanaka Bradley, regarding a drug-smuggling operation" and she "also knew that Jernigan and Bradley were found guilty of the drug-related charges." (*Id*. at ¶ 10). Nabors was "also aware that there had been a separate criminal trial involving former Delta employees, Kelvin Atwater and Clifford Skinners" which "involved drugs being smuggled into the Detroit Metropolitan Airport through Delta flights that originated in Houston, Texas." (*Id.* at ¶ 11).

Delta's EO Office reviewed the letter requesting reinstatement "and tried to contact each of the Former Employees at their last known address to explain the EO process, interview the Former Employee, and obtain any additional information that the Former Employee may have had." (Nabors's Decl. at ¶ 12). Nabors was only able to reach Joseph, who submitted a written statement. (*Id*. at ¶ 13; *see also* Joseph's written statement attached as Ex. 3 to Nabors's Decl.) As part of her investigation, Nabors reviewed the March 18, 2013 written statement that Joseph provided to her. (*Id.*).

As part of her investigation, Nabors also reviewed the Government's trial powerpoint

7

presentation "which explained the testimony provided during the criminal trial, including testimony from other former Delta employees, and the evidence indicating that Coke, Joseph, Jernigan, Stephens, and Bradley were involved in a drug-smuggling operation, wherein drugs were transported from Montego Bay, Jamaica to Detroit Metro Airport using customers' baggage." (Nabors's Decl. at ¶ 15). Because neither Joseph nor Coke testified at trial, there was no trial testimony from them for Nabors to review. (*Id.* at ¶ 21).

"Upon review of the evidence set forth in the Presentation," Nabors concluded that Coke and Joseph, "along with their two co-defendants who were found guilty, exploited their positions with Delta by taking advantage of Delta customers and using the customer's luggage to smuggle illegal drugs from Jamaica to Detroit." (Nabors's Decl. at ¶ 21). She concluded their conduct "not only violated Delta's anti-drug policy, but was unprofessional and failed to put customers first." (*Id.*).

Based on its investigation, Delta decided not to not re-hire either Coke or Joseph. (*Id.* at ¶ 22).

On May 14, 2013, Delta sent Joseph a letter advising that Delta was declining to reinstate his employment. (Ex. A to Pls.'s Resp. Br. at 3). That letter stated, in pertinent part:

> As you know, your attorney submitted an appeal and information on your behalf and that information along with the circumstances surrounding the termination of your employment has been reviewed. Your employment was terminated on May 13, 2011 after you were arrested and criminal charges were brought against you. During the company's investigation, Delta learned that the Detroit Airport would be withholding your security badge (or SIDA) for an indefinite period of time. As you know, an employee cannot perform the essential functions of their job without a SIDA badge.
>
> Your appeal included a review of the information provided, as well as information available through Delta's own records, and information Delta obtained about certain facts and evidence that were presented during your criminal trial. Among

>the information Delta considered was testimony from other former Delta employees about your knowledge and participation in the events giving rise to the criminal charges. As a result of our review, the decision has been made to deny your appeal request for reinstatement.

(*Id.*).

On June 24, 2013, Defendant sent Coke a nearly identical letter, advising that it was declining to reinstate his employment. (Ex. A to Pls.'s Resp. Br. at 4). It stated, in pertinent part:

>A review has been conducted of the information you presented and the circumstances surrounding the termination of your employment. Your employment was terminated on May 13, 2011 after you were arrested and criminal charges were brought against you. During the company's investigation, Delta learned that the Detroit Airport would be withholding your security badge (or SIDA) for an indefinite period of time. As you know, an employee cannot perform the essential functions of their job without a SIDA badge.

Your appeal included a review of the information you provided, as well as information available through Delta's own records, and information Delta obtained about certain facts and evidence that were presented during your criminal trial. Among the information Delta considered was testimony from other former Delta employees about your knowledge and participation in the events giving rise to the criminal charges. As a result of our review, the decision has been made to deny your appeal request for reinstatement.

(Ex. A to Pls.' Resp. Br., at 4).

Thereafter, on or about July 12, 2013, Plaintiffs filed suit against Delta.

## ANALYSIS

### I.     Plaintiffs' National Origin Discrimination Claims Under The ELCRA

Michigan's ELCRA prohibits employers from discriminating against individuals with respect to "employment, compensation, or a term, condition or privilege of employment" because of race or national origin. Mich. Comp. Laws § 37.2202(1)(a).

Plaintiffs Coke and Joseph claim that Delta discriminated against them based on their

9

national origin, in violation of the ELCRA: 1) when Delta terminated their employment on May 13, 2011; and 2) when Delta decided not to rehire them in 2013, after the jury had reached not guilty verdicts in their criminal trial.

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on his discrimination claim. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

Here, Plaintiffs do not assert that their claims are supported by any direct evidence of discrimination. Rather, they seek to proceed under the circumstantial evidence approach.

Under the circumstantial evidence approach, a plaintiff must show the existence of facts which create an inference of discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Both parties acknowledge that the *McDonnell Douglas* framework is applied to Plaintiffs' claims brought under the ELCRA and that Plaintiffs bear the burden of establishing a prima facie case.

Once a plaintiff establishes such a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the Plaintiff's discharge. If the employer articulates such a reason, then the Plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination. *Skrjanc v. Great Lkakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001).

Both parties agree that to establish a prima facie case of discrimination, a plaintiff must generally establish that: 1) he is a member of a protected class; 2) he was qualified for his job; 3) he suffered an adverse employment decision; and 4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.

(Pls.' Br. at 2; Def.'s Br. at 4; *see also Idemudia v. J.P. Morgan Chase*, 434 Fed. App'x 495, 501 (6th Cir. 2011) (citations omitted).

### A. Discrimination Claim Based On May 13, 2011 Termination

Delta contends that Plaintiffs Coke and Joseph cannot establish a prima facie case of national origin discrimination based upon their terminationa on May 13, 2011 because neither of them can establish the second or fourth elements of a prima facie case. That is, Delta contends that they cannot establish that they were qualified for the job of baggage handler on the date they were terminated and that they cannot identify any other similarly-situated non-protected employee who was given more favorable treatment.

The Court agrees that neither Coke nor Joseph can establish that they were qualified for the job of baggage handler on the date they were terminated.

When considering the second element of the prima facie case the Court must focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job. *Wexler v. White's Fine Furniture, Inc*., 317 F.3d 564, 575 (6th Cir. 2003). Moreover, to establish this element the plaintiff must show that he could meet the employer's legitimate expectations "at the time of discharge." *Vincent v. Brewer*, 514 F.3d 489, 495 (6th Cir. 2007).

It is undisputed that an individual cannot perform the essential job functions of a baggage handler without a SIDA badge from the Wayne County Airport Authority. It is also undisputed that neither Plaintiff had a SIDA badge on the date they were terminated by Delta, May 13, 2011, because the Wayne County Airport Authority had revoked Plaintiffs' SIDA badges for an indefinite period of time, due to the criminal charges.

Thus, Plaintiffs cannot establish the second prong of a prima facie claim based on their

termination. As such, the Court need not consider whether they can meet the other challenged prong, the fourth prong.

Even so, the Court concludes that Plaintiffs have not met their burden as to that either. Plaintiffs can meet the fourth prong by establishing either: 1) that they were replaced by a person outside the protected class; or 2) or treated differently than similarly situated non-protected employees. As Defendant notes, Plaintiffs have not identified any Delta baggage handler who had his or her SIDA revoked and was nevertheless not terminated.

Plaintiffs can also meet the final prong by showing they were replaced by persons outside the protected class. Plaintiffs assert that they were replaced by persons outside the protected class, and as a practical matter they likely were, but Plaintiffs have offered no *evidence* to establish that, such as an interrogatory response from Delta stating the national origin of the employees hired to replace Plaintiffs. Rather, Plaintiffs direct the Court to Exhibit D to their brief to support their assertion that they "were replaced by non-Jamaicans." But that exhibit consists of a page of Johnson's Declaration that states Plaintiffs' "positions were backfilled by other Delta employees based solely on seniority." The cited page of Johnson's Declaration states nothing about the national origin of the employees who replaced Plaintiffs.

Accordingly, Plaintiffs' ELCRA claims based upon their terminations in 2011 shall be dismissed with prejudice.

### B. Claim Based On Failure To Rehire In 2013

Plaintiffs also assert that Delta discriminated against them, based on their national origin, when it declined to re-hire them, in May and June of 2013, after the jury rendered not guilty verdicts as to them in the criminal trial.

Although neither party addresses this, establishing a prima facie case of discrimination based upon a failure-to-hire theory requires a modified prima facie case as to the final prong. In *McDonnell Douglas*, the Supreme Court stated that a plaintiff can establish a prima facie case as follows:

> This may be done by showing (i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Similarly, in *Birch*, the Sixth Circuit explained::

> The first three prima facie elements are generally that (1) the plaintiff belongs to a protected class ( e.g., sex); (2) the plaintiff was qualified for the position; and (3) the plaintiff was subjected to an adverse employment action. *E.g., McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Mitchell*, 964 F.2d at 582. The fourth element in a failure to hire case, as in *McDonnell Douglas*, requires the plaintiff to show that he was rejected for the position and that the employer continued to seek applications from persons with the plaintiff's qualifications and/or that a person outside of the plaintiff's protected class was hired. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir.1996). An alternative manner of satisfying the fourth element in a disparate treatment case is through evidence that, for the same or similar conduct, the plaintiff was treated differently than a similarly-situated employee outside of the plaintiff's protected class. *Mitchell*, 964 F.2d at 582 (holding that a plaintiff suing for discriminatory discharge can prove the fourth element of her prima facie case by showing either that she was replaced by someone outside of the protected class or that "a comparable non-protected person was treated better").

*Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 166 n.12 (6th Cir. 2004).

Here, neither party has addressed or applied the appropriate prima facie case that should be applied as to Plaintiffs' failure-to-hire claim.

Nevertheless, even if Plaintiffs can establish a prima facie case as to their failure-to-hire claim, Delta also asserts that the claim fails because Plaintiffs cannot establish that Delta's

legitimate, non-discriminatory reason for failing to hire Plaintiffs was a pretext for unlawful discrimination. The Court agrees.

Delta contends that it declined to re-hire Coke and Joseph in 2013 because, based upon its investigation, Delta had a good faith belief that they were involved the drug trafficking operation and exploited their positions as baggage handlers.

Once a defendant articulates a legitimate non-discriminatory reason for the challenged action, the plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination. *Skrjanc v. Great Lkakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001).

A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason: 1) had no basis in fact; 2) did not actually motivate the defendant's challenged conduct; or 3) was insufficient to warrant the challenged conduct. *Wexler v. White Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003); *Manzer*, 29 F.3d at 1084. The first type of showing consists of evidence that the proffered bases for the termination never happened (*i.e.*, that they are factually false). With respect to the second kind of showing, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.* The third showing consists of evidence that other employees, particularly those not in the protected class, were not fired even though they engaged in similar conduct. *Id.*

Where, as here, a case is at the summary judgment stage, a plaintiff seeking to prove illegal discrimination via indirect evidence must submit sufficient evidence from which a reasonable jury could conclude that the defendant's legitimate, nondiscriminatory reasons for its

14

actions are a pretext for unlawful retaliation. *Vincent v. Brewer*, 514 F.3d 489, 494 (6th Cir. 2007).

Plaintiffs seek to establish pretext in two ways. First, Plaintiffs assert that Delta has given inconsistent reasons for its challenged actions and that can establish pretext. Second, Plaintiffs note that they were acquitted of the criminal charges and assert that Delta's reason for not hiring them (i.e., its determination that Plaintiff were involved in the drug trafficking operation) has no basis in fact. Both will be addressed below.

### 1. Alleged Inconsistent Reasons For Action

In response to Delta's motion, Plaintiffs assert that a plaintiff can successfully show pretext for discrimination when two employer managers gave inconsistent statements about plaintiff's termination. *Tinker v. Sears Roebuck & Co* 127 F3d 519 (6th Cir. 1997)." (Pls.' Resp. Br. at 5 & 7). Plaintiffs assert that "Plaintiffs' inability to get a SIDA badge, is pretext." (*Id*.). They assert that in order to get their badges reinstated, they would first have to show that they had employment at the airport. But that argument ignores that there are two distinct adverse actions at issue here: 1) Plaintiffs' termination in 2011 for having had their SIDA badges revoked for an indefinite period of time by the Wayne County Airport Authority; and 2) Delta not re-hiring them, in 2013, after they had been acquitted in the criminal case.

As to the first challenged adverse action (i.e., termination based on not having a valid SIDA badge), the only reason Delta has ever stated for that challenged action (both at the time of termination and in this case) is that Plaintiffs were terminated because the Wayne County Airport Authority revoked their SIDA badges for indefinite period of time and, without them, Plaintiffs could not perform the essential functions of their job.

As to the second challenged adverse action (ie., not re-hiring them after they were acquitted in the criminal case), Delta has not asserted that Plaintiffs were not re-hired because they lacked a SIDA badge. Rather, in both of the 2013 letters advising they would not be rehired and in this action, Delta has taken the position that it declined to re-hire Plaintiffs because, even through they were not found guilty beyond a reasonable doubt in the criminal case, based on its investigation, Delta believed that Plaintiffs had been involved in the criminal activity that took place at the airport.

Thus, Delta has not given inconsistent reasons for the challenged adverse actions in this case.

### 2. No Basis In Fact

Plaintiffs also seek to establish pretext by showing that Delta's reason for not hiring them (i.e., its determination that Plaintiff were involved in the drug trafficking operation) has no basis in fact.

To prevail on its motion for summary judgment, Delta does not have to prove that Coke and Joseph were actually involved in the drug trafficking operation "or show that its investigation was perfect; it need only show that it decided" not to re-hire Coke and Joseph "'based on an honestly held belief in a nondiscriminatory reason supported by particularized facts after a reasonably thorough investigation.'" *Graham v. Best Buy Stores, L.P.*, 298 F. App'x. 487, 496 (6th Cir. 2008) (quoting *Wright v. Murray Guard, Inc*., 455 F.3d 702 (6th Cir. 2006)).

Under the Sixth Circuit's modified honest-belief doctrine, "[i]n determining whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the

key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

Here, before making the decision not to re-hire Coke and Joseph after they were acquitted in the criminal case, Delta had: 1) separately interviewed both Coke and Joseph after they had been initially arrested, and took written statements from them; 2) tried to contact both Coke and Joseph after they had requested to be re-hired, to obtain any additional information they had; 3) reviewed their employment records; 4) contacted Joseph, obtained another written statement from him, and reviewed and considered that statement; 5) learned that neither Coke nor Joseph testified at trial and therefore there was no trial testimony from them to review; and 6) considered that both men had been indicted by a federal grand jury in the criminal case,[1] and reviewed the Government's summary of the evidence presented at trial that implicated Coke and Joseph in the drug-trafficking operation.

The Court finds that Plaintiffs have not made a sufficient showing of pretext to overcome Delta's proffered legitimate non-discriminatory reason for not re-hiring Coke and Joseph in 2013.

Accordingly, Plaintiffs' ELCRA claims based on Delta's decision not to rehire Plaintiffs in 2013 shall be dismissed with prejudice.

---

[1] As courts have recognized in various contexts, "an arrest or indictment has independent legal significance, insofar as it shows the existence of probable cause to believe that a defendant committed a crime, even when the Government ultimately fails to prove guilt." *United States v. Flagg*, 178 F.Supp.2d 903 (S.D. Ohio).

## II. Plaintiffs' Public Policy Claim

Delta's Motion for Summary Judgment also challenges Count II of Plaintiffs' Complaint, which they title "Violation of Public Policy." In that count, Plaintiffs allege:

> 27. Defendant wrongfully terminated Plaintiffs because they were indicted without any evidence of wrongdoing.
> 28. Subsequently, Plaintiffs were acquitted on all charges.
> 29. Plaintiffs complied with all Defendant's investigations, including submitting to polygraph tests and providing written statements and being subjected to home searches.
> 30. Defendant wrongfully refused to reinstate Plaintiffs after they were acquitted.
> 31. It is a well established American principle that one is innocent until proven guilty.
> 32. Therefore, Defendant's action of terminating and refusing to reinstate Plaintiffs is a violation of public policy.

(Compl. at 3).

In its motion, Delta seeks dismissal of Count of Plaintiffs' Complaint and states as follows:

> Plaintiff's allege that the failure to reinstate-rehire them to their former positions is a violation of public policy. As an initial matter, Plaintiffs' claim fails as a matter of law because an employee's right to be reinstated/rehired has never been recognized as actionable, under common law on public policy grounds. *Berrington v. Wal-Mart Stores, Inc*., 696 F.3d 604, 609 (6th Cir. 2012). Accordingly, as the Sixth Circuit has recognized, "[w]ithout any indications from binding or persuasive authority that Michigan courts are prepared to recognize a private claim for wrongful failure to rehire, . . . our precedent requires us to refrain from doing so on behalf of the Michigan Supreme Court." *Id.* at 610.
>
> Further, as set forth above, Plaintiffs cannot identify a statutory exception that is provided to employees. Instead, Plaintiffs rely on the principle that they were acquitted and therefore, should be rehired. Yet, at the Supreme Court has explained, an "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." *U.S. v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984).

(Def.'s Br. at 12-13).

Although Plaintiffs filed a response brief in opposition to Delta's motion, they notably fail to respond to any of the challenges to Count II of their Complaint. Thus, Plaintiffs have not opposed the dismissal of Count II.

Moreover, the Court finds that Count II fails to state a claim upon which relief may be granted, based upon the cases cited by Delta in its motion.

Accordingly, the Court shall dismiss Count II with prejudice.

### CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant Delta's Motion for Summary Judgment is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

    S/Sean F. Cox
    Sean F. Cox
    United States District Judge

Dated: November 14, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 14, 2014, by electronic and/or ordinary mail.

    S/Jennifer McCoy
    Case Manager